# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WAYNE BOLTON,<br><br>   Plaintiff,<br><br> v.<br><br>E. SODERGREN, et al.,<br><br>   Defendants. | Case No. 1:16-cv-00298-LJO-SKO (PC)<br><br>**FINDINGS AND RECOMMENDATIONS ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>**(Doc. 34)**<br><br>**TWENTY-ONE DAY DEADLINE** |

## INTRODUCTION

Plaintiff, Wayne Bolton, a state prisoner proceeding *pro se* and *in forma pauperis*, filed this action pursuant to 42 U.S.C. § 1983. On May 3, 2018, Defendants K. Moser, W. Steadman and E. Sodergren, ("Defendants"), filed a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56[1] raising: (1) Plaintiff's failure to exhaust the available administrative remedies in compliance with 42 U.S.C. § 1997e(a); (2) the cognizability of Plaintiff's Eighth Amendment claim for asbestos exposure; and (3) qualified immunity. (Doc. 34.)[2] After multiple extensions of time, Plaintiff filed his opposition.[3] (Docs 37, 40, 41.) Defendants filed a reply.

---

[1] The Federal Rules of Civil Procedure will be referred to as "Rule *." Any reference to other statutory authorities shall so indicate.

[2] Defendants also move for dismissal of Plaintiff's claims under state law. (Doc. 34.) On screening, Plaintiff did not allege compliance with the California Government Claims Statute to be able to proceed on state law claims, (Doc. 26, pp. 9-10), and chose to proceed solely on his claims found cognizable under the Eighth Amendment against Defendants, rather than amending to show compliance (Doc. 27). Thus, those arguments need not be considered since there are no claims under state law pending in this action.

[3] Plaintiff was provided with contemporaneous notice of the requirements for opposing a summary judgment motion for failure to exhaust administrative remedies with Defendants' moving papers as well as separate order from this Court. *Stratton v. Buck*, 697 F.3d 1004, 1008 (9th Cir. 2012); *Woods v. Carey*, 684 F.3d 934, 939-41 (9th Cir. 2012); *Rand v. Rowland*, 154 F.3d 952, 960-61 (9th Cir. 1998). (Docs. 34, 35.)

1

(Doc. 42.) The motion is deemed submitted. L.R. 230(*l*).

For the reasons discussed below, the Court finds that Plaintiff failed to exhaust available administrative remedies before filing suit in violation of 42 U.S.C. § 1997e(a), that this action should not be dismissed for Plaintiff's failure to state a claim, and that Defendants are entitled to qualified immunity. While failure to exhaust results in dismissal without prejudice, qualified immunity entitles Defendants to dismissal with prejudice.

## **FINDINGS**

### A. Legal Standards for Summary Judgment

The failure to exhaust is an affirmative defense which the defendants bear the burden of raising and proving on summary judgment under Rule 56 of the Federal Rules of Civil Procedure.[4] *Jones*, 549 U.S. at 216; *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014).

On summary judgment, Defendants must first prove that there was an available administrative remedy which Plaintiff failed to exhaust before filing suit. *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015) (citing *Albino*, 747 F.3d at 1172). If Defendants carry their burden of proof, the burden of production shifts to Plaintiff "to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id.*

Plaintiff's filings must be liberally construed because he is a *pro se* prisoner. *Thomas v. Ponder*, 611 F3d 1144, 1150 (9th Cir. 2010) (quotation marks and citations omitted). All inferences must be drawn in the light most favorable to Plaintiff as the nonmoving party. *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 942 (9th Cir. 2011) (quotation marks and citation omitted). Inferences, however, are not drawn out of the air; the nonmoving party must produce a factual predicate from which the inference may reasonably be drawn. *See Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th Cir. 1987).

A defendant is only entitled summary judgment if the undisputed evidence viewed in the

---

[4] The Federal Rules of Civil Procedure will hereinafter be referred to as "Rule *." Any reference to other statutory authorities shall so indicate.

2

light most favorable to the prisoner demonstrates that administrative remedies were available to Plaintiff which he failed to exhaust. *Williams*, at 1166. The action should then be dismissed without prejudice. *Jones*, 549 U.S. at 223-24; *Lira v. Herrera*, 427 F.3d 1164, 1175-76 (9th Cir. 2005).

### B. Exhaustion

#### 1. Statutory Exhaustion Requirement

Pursuant to the Prison Litigation Reform Act of 1995, "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Prisoners are required to exhaust available administrative remedies before filing suit. *Jones*, 549 U.S. at 211; *McKinney v. Carey*, 311 F.3d 1198, 1199-1201 (9th Cir. 2002). Where, as here, a prisoner proceeds in an action under § 1983 on an amended complaint, the PLRA is satisfied if the inmate exhausted administrative remedies after the filing of the original complaint, but before the filing of the amended complaint. *Rhodes v. Robinson*, 621 F.3d 1002, 1007 (9th Cir. 2010). The claims must be "new." The events giving rise to them must not have occurred until after the filing of the original complaint, and the precipitating events of the new claim(s) must be related to the events alleged in the original complaint. *Id.* Accordingly, where the events on which a claim is based occurred before the filing of the original complaint, the claim is not "new" and must have been exhausted before the filing of the original complaint. *Id.*

Inmates are required to "complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Woodford v. Ngo*, 548 U.S. 81, 88 (2006). Inmates must adhere to the "critical procedural rules" specific to CDCR's process. *Reyes v. Smith,* 810 F.3d 654, 567 (9th Cir. 2016). The exhaustion requirement applies to all suits relating to prison life, *Porter v. Nussle*, 435 U.S. 516, 532 (2002), regardless of the relief both sought by the prisoner and offered by the process, *Booth v. Churner*, 532 U.S. 731, 741 (2001).

//

"Under § 1997e(a), the exhaustion requirement hinges on the "availability' of administrative remedies: An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones." *Ross v. Blake*, --- U.S. ---, 136 S. Ct. 1850, 1858 (June 6, 2016). An inmate is required to exhaust those, but only those, grievance procedures that are "capable of use" to obtain "some relief for the action complained of." *Id.* at 1858-59, citing *Booth v. Churner*, 532 U.S. 731, 738 (2001). However, "a prisoner need not press on to exhaust further levels of review once he has [ ] received all 'available' remedies." *See Brown v. Valoff*, 422 F.3d 926, 935 (9th Cir. 2005).

On summary judgment, Defendants must first prove that there was an available administrative remedy which Plaintiff did not exhaust before filing suit. *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015) (citing *Albino*, 747 F.3d at 1172). If Defendants carry their burden of proof, the burden of production shifts to Plaintiff "to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id.* "If the undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56." *Williams*, at 1166. The action should then be dismissed without prejudice. *Jones*, 549 U.S. at 223-24; *Lira v. Herrera*, 427 F.3d 1164, 1175-76 (9th Cir. 2005).

### 2. CDCR's Inmate Appeals Process

The California Department of Corrections and Rehabilitation ("CDCR") has a generally available administrative grievance system for prisoners to appeal any departmental decision, action, condition, or policy having an adverse effect on prisoners' welfare, Cal. Code Regs., tit. 15, § 3084, *et seq*. Compliance with section 1997e(a) requires California state prisoners to use that process to exhaust their claims. *Woodford v. Ngo*, 548 U.S. 81, 85-86 (2006); *Sapp v. Kimbrell*, 623 F.3d 813, 818 (9th Cir. 2010).

As of 2011, a CDCR inmate initiates the grievance process by submitting a Form 602, also known as an inmate appeal ("IA"), describing "the problem and action requested." Cal.

Code Regs., tit. 15, § 3084.2(a).[5] An IA must be submitted within 30 calendar days of the event or decision being appealed, first knowledge of the action or decision being appealed, or receipt of an unsatisfactory departmental response to an appeal filed. Tit. 15 § 3084.8(b). The inmate is limited to raising one issue, or a related set of issues, per IA, in the space provided on the first page of the IA form and one attached page (which must be on the prescribed Attachment form "602-A") in which the inmate must state all facts known on that issue. Tit. 15 § 3084.2(a)(1),(2), & (4). All involved staff members are to be listed with a description of their involvement in the issue. Tit. 15 § 3084.2(a)(3). Originals of supporting documents must be submitted with the IA; if they are not available, copies may be submitted with an explanation why the originals are not available, and are subject to verification at the discretion of the appeals coordinator. Tit. 15 § 3084.2(b). With limited exceptions, an inmate must initially submit the IA to the first-level. Tit. 15 § 3084.7. If dissatisfied with the first-level response, the inmate must submit the IA to the second-level within thirty days, and thereafter to the third-level. Tit. 15 § 3084.2, & .7. First and second-level appeals must be submitted to the appeals coordinator at the institution for processing. Tit. 15 § 3084.2(c). Third-level appeals must be mailed to the Appeals Chief via the United States Postal Service. Tit. 15 § 3084.2(d).

Defendants contend that Plaintiff did not exhaust available administrative remedies on his claims in this action under § 1983 before he filed suit. (Doc. 34.) The Court must determine if Plaintiff filed any IAs concerning the allegations on which he is proceeding in this action; if so, whether Plaintiff complied with CDCR's process; and if Plaintiff did not comply with CDCR's process, whether it was because the process had been rendered unavailable to him. *Ross*, 136 S. Ct. at 1859; *Sapp*, 623 F.3d at 823.

### 3. **Plaintiff's Allegations**

#### a. **The Original Complaint**

Defendants correctly state that, on March 4, 2016, Plaintiff filed the verified original Complaint in this action alleging deliberate indifference to his safety. (Doc. 1.) Plaintiff alleged

---

[5] These regulations are statutes, not mere agency or administrative record as Defendants suggest. (Doc. 34-7.) Thus, Defendants' request for judicial notice thereof is disregarded as unnecessary.

that, on December 26, 2014, while assigned to work as an inmate plumbing assistant, Defendants Moser and Steadman instructed him to remove asbestos-containing materials without providing him CDCR mandated safety equipment. (*Id.*, at ¶ 6.) Plaintiff allegedly asked for safety equipment, such as gloves and a dust mask, which Defendants denied, explaining "as long as the material was wet[,] it [] posed no threat." (*Id.*, at ¶ 7.) Plaintiff alleged that Defendant Sodergren, who responded to Plaintiff's Form 22 request, falsely determined that Plaintiff was not involved with the asbestos removal. (*Id.*, at ¶ 12.)

In the original Complaint, Plaintiff also named Dr. Owolabi for refusing to properly treat Plaintiff's exposure to asbestos, and Warden Holland, for allowing her "subordinates to expose their inmate workers to asbestos particles." (*Id.*, at ¶ 8.) The original Complaint was screened and dismissed for failure to state a claim against any defendant, and leave to amend was granted. (Doc. 18.)

### b. The First Amended Complaint

The verified First Amended Complaint ("FAC") alleges the same claims as the Complaint arising from alleged exposure to asbestos-containing materials, but expands the allegations against Defendants. (Doc. 25.) In the FAC, Plaintiff alleges that on December 26, 2014, he was working as an inmate plumber, when he was assigned a task involving the handling of asbestos by Defendants Moser and Steadman. (*Id.*, at ¶¶ 8-9.) Plaintiff alleges he was not informed that he was working with asbestos, and performed the work without any protective clothing. (*Id.*, at ¶ 10.) Plaintiff was required to work with the asbestos without warning, and to breathe the asbestos dust and micro-fiber particles disbursed by his handling of the dangerous carcinogenic material. (*Id.*, at ¶ 12.) Plaintiff alleges that he immediately developed a cough and eye irritation, and in response to an inquiry about the insulation materials, Defendant Moser told Plaintiff that the material was asbestos, but "since it [was] wet it presented no health risk to [P]laintiff." (*Id.*, at ¶ 26.) Plaintiff alleges this was not true because dry particles fell as Plaintiff cleaned the area. (*Id.*, at ¶ 37.)

Plaintiff began experiencing coughing, eye irritation, throat irritation, sneezing, runny nose, and other symptoms he did not have before this exposure to asbestos; he sought an x-ray

from the medical clinic, which did not show any injury. (Doc. 25, at ¶¶ 16-18.) Plaintiff also filed a claim for worker's compensation benefits, which was denied because there was no evidence he was suffering any injury due to asbestos exposure. (*Id*., ¶ 19.)

Plaintiff alleges he submitted a written complaint to CCI's warden on August 19, 2015. (Doc. 25, at ¶ 22.) Defendant Sodergren responded, stating that Plaintiff was not asked to assist the plumbers and did not come into contact with any asbestos-containing materials on December 26, 2014. (*Id.*, at ¶ 23.) Furthermore, air monitoring was completed and tested, and the results showed "no asbestos fibers above the permissible exposure limit." (*Id*.) Plaintiff alleges these statements were false, because he responded to an emergency leak and worked that day. (*Id*., ¶ 24-26.) After receiving the response by Defendant Sodergren, Plaintiff submitted a 602 inmate grievance related to the asbestos incident, asking for Defendant Sodergren to acknowledge that Plaintiff was involved in the repair and cleanup of the insulation materials, and that asbestos fibers were present. (*Id*., ¶ 27.)

Plaintiff proceeds in this action on his claim under the Eighth Amendment for deliberate indifference against Defendants Moser and Steadman (correctional officers also serving as supervising plumbers) for instructing him to remove material which they knew contained asbestos without the proper safety equipment. (Doc. 25, at ¶¶ 36-37.) Plaintiff also proceeds on allegations that Defendant Sodergren, the Building Trades Supervisor, was present during the asbestos-related incident, and failed to act to prevent the exposure. (*Id*., ¶ 38.)[6] Finally, Plaintiff alleges he is suffering the emotional stress related to asbestos exposure, which he "will very likely one day be revealed through lung cancer or some other debilitating disease or related physical ailment and disability, including an early death." (*Id.*, at ¶ 21.) Plaintiff seeks monetary compensation for his injuries. (*Id.*, at ¶¶ 43-44.) These allegations in the FAC were found to state a cognizable claim under the Eighth Amendment against Defendants Moser, Steadman, and Sodergren upon which Plaintiff chose to proceed. (Docs. 25, 26, 27, 28.)

---

[6] Plaintiff re-alleged his claims against the warden and physician who treated him, but those claims were dismissed from this action. (*See* Docs. 26, 27, 28.)

### 4. Plaintiff's Inmate Appeals

Defendants' evidence reveals that Plaintiff submitted two IAs which must be considered for exhaustion purposes: Log No. CCI-15-02391 ("IA #15-02391"), and Log No. CCI-HC-1503747.1 ("IA #15037471"). (Doc. 34, p. 11-20.)

#### a. IA #15-02391

Defendants' evidence demonstrates that Plaintiff submitted IA #15-02391 regarding the December 26, 2014 claim alleged in the FAC against Defendant Sodergren for falsifying information in a Form 22 submitted by Plaintiff regarding his exposure to asbestos. Defendants' evidence also shows that this appeal was not exhausted before Plaintiff initiated this action.

Specifically, Defendants' evidence shows that Plaintiff submitted IA #15-02391 on November 5, 2015. (SUF #11.) Plaintiff claimed he was exposed to asbestos containing materials on December 26, 2014, but that on October 5, 2015, Defendant Sodergren responded to a CDCR Form 22 filed by Plaintiff, denying that Plaintiff had been exposed to asbestos. (*Id.*) In IA #15-02391, Plaintiff requested that Defendant Sodergren correct his response to acknowledge that Plaintiff was involved in the repair and cleanup operation where asbestos fibers were present. (SUFs ¶ 11-12.) This appeal did not include allegations that Defendants Moser and Steadman were deliberately indifferent to Plaintiff's exposure to asbestos, or a claim of deliberate indifference against Defendant Sodergren. (SUF ¶ 14.) Even if it had included such claims, this appeal was not exhausted until it was denied at the Third Level of Review on April 5, 2016—one month after the Complaint was filed. (SUF ¶ 12.)

#### b. IA #15037471

Defendants' evidence also shows that Plaintiff submitted a health care appeal, IA #15037471, on August 19, 2015. (SUF ¶ 15.) This appeal addressed Plaintiff's request for medical testing and examination to check for alleged asbestos exposure, but did not address his claim of deliberate indifference against Defendants Moser, Steadman, or Sodergren. (SUF ¶ 15, 18.) The Court agrees with Defendants' assessment that this appeal did not alert prison officials to Plaintiff's claims of deliberate indifference, on which he proceeds in this action. Instead, this appeal addressed the claims against Dr. Owolabi, Plaintiff's treating physician who has been

8

dismissed from this action. (SUF ¶ 17.) This appeal did not describe any wrongdoing by Defendants as Plaintiff sought medical testing to provide documentation to show the asbestos exposure in support of a workman's compensation claim he was pursuing regarding the incident. (SUF ¶ 18.)

The statements in IA #15-02391 and IA #15037471, viewed in the light most favorable to Plaintiff, *Jones*, 549 U.S. at 216, show that Plaintiff did not exhaust available administrative remedies on the substance of his claims before Plaintiff filed this action. The Court finds that Defendants have met their burden to demonstrate the absence of a genuine issue of material fact as to Plaintiff's failure to exhaust available administrative remedies prior to filing suit. The burden therefore shifts to Plaintiff to establish that a genuine issue as to any material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). Plaintiff may not rely on the mere allegations or denials of his pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of his contention that the dispute exists. Fed. R. Civ. P. 56(e); *Matsushita*, 475 U.S. at 586 n.11; *First Nat'l Bank,* 391 U.S. at 289; *Strong v. France*, 474 F.2d 747, 749 (9th Cir. 1973).

### 5. Plaintiff's Opposition

In opposition, Plaintiff frames the exhaustion dispute as: "Whether the plaintiff who seeks damages actions (sic) brought under the civil rights act in Federal court require (sic) exhaustion of state remedies." (Doc. 41, p. 3.) Plaintiff contends that exhaustion via the inmate appeals process is not required on the events underlying his claims in this action since doing so "would have brought [him] virtually no adequate remedy and would have been futile. (Doc. 41, p. 9 (citing *White v. California,* 195 Cal.App.3d 452, 464 (1987).) Plaintiff contends that prisoners do not need to exhaust administrative remedies on claims raised in federal civil rights actions "seeking only money damages, because money damages are normally not available through the CDCR administrative appeal process." (*Id.* (citing *Rumbles v. Hill*, 182 F.3d 1064 (9th Cir. 1999); *Whitley v. Hunt*, 158 F.3d 882, 886-87 (5th Cir. 1998); *Garrett v. Hawk*, 127 F.3d 1263 (10th Cir. 1997)).) Plaintiff relies on law which is neither current, nor accurate. As stated above, the exhaustion requirement applies to all suits relating to prison life, *Porter*, 435 U.S. at 532,

regardless of the relief sought by the prisoner and offered by the process, *Booth*, 532 U.S. at 741. It matters not that Plaintiff seeks money damages—he must still have exhausted available administrative remedies before filing suit to proceed.

Plaintiff also contends that inmates who intend to file a state tort action "must first file a government claim with the board of control, and when doing so, they do not need to exhaust normal administrative requirements by filing a 602 through the highest level. Such a state claim through the Board of Control is required by an inmate first when a state tort action is anticipated to be brought against the state or against a state employee." (Doc. 41, p. 9.) Plaintiff cites no authority[7] for this proposition and the Court finds none.

To the contrary, where a claim involves rights under state law, inmates must exhaust both the inmate appeals process and the process required by California's Government Claims Act ("CGCA").[8] *See Woodford v. Ngo*, 548 U.S. 81, 88 (2006) (Inmates are required to "complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court."); *Munoz v. California*, 33 Cal.App.4th 1767, 1776 (1995) ("The Tort Claims Act requires that any civil complaint for money or damages first be presented to and rejected by the pertinent public entity.") Compliance with one does not obviate the need for complying with the other. In fact, to allow an inmate to complete both processes, the six-month deadline for filing a court action after the Board of Control rejects a government tort claim is tolled until an inmate finalizes exhaustion of CDCR's administrative remedy process. *Wright v. State*, 122 Cal.App.4th 659, 670-71 (2004).

Plaintiff further contends that he was not required to exhaust an inmate appeal on the issues raised in this case because it pertains to an on-the-job injury rather than conditions of confinement or general injury. (Doc. 41, p. 9.) Plaintiff contends that the circumstances of which

---

[7] Plaintiff reliance on California Government Code §945.4 and §950.2 is unfounded because neither suggests that the inmate appeals process is obviated by the filing of a state tort claim. Section 945.4 addresses the requirement for a claim to have been acted on by the applicable state board or for it to be deemed rejected by lapse of time. Section 950.2 address grounds for barring a cause of action against a public employee.

[8] The Government Claims Act was formerly known as the California Tort Claims Act. *City of Stockton v. Superior Court*, 42 Cal.4th 730, 741-42 (Cal. 2007) (adopting the practice of using Government Claims Act rather than California Tort Claims Act).

10

he complains in this action constitute "a bold snub and disregard for both CAL-OSHA and the Federal Occupational Safety AND Health Administration guidelines and directions for employees required to work with carcinogenic asbestos." (*Id.*) However, "OSHA violations do not themselves constitute a private cause of action for breach." *Crane v. Conoco, Inc.*, 41 F.3d 547, 553 (9th Cir. 1994) (citing 29 U.S.C. § 653(b)(4) ("[n]othing in this chapter shall be construed to ... enlarge or diminish or affect in any other manner the common law or statutory rights, duties, or liabilities of employers and employees"); and 35 ALR Fed. 461, § 2 ("The cases are consistent in holding that [OSHA] does not create a private cause of action for violations of the Act or the regulations thereunder")). Since no private cause of action exists under OSHA, such violations do not provide a basis for Plaintiff to avoid the exhaustion requirement on his present claims.

Thus, Plaintiff fails to meet his burden of showing a factual dispute to defeat Defendants' motion for summary judgment for his failure to exhaust administrative remedies before filing suit in violation of 42 U.S.C. § 1997e(a). Defendants' motion for summary judgment should be GRANTED.

### C.     Failure to State a Claim

Defendants also move to dismiss this action on the premise that Plaintiff fails to state a cognizable claim for deliberate indifference against them. (Doc. 34, pp. 21-26.) Defendants argue that the single instance of exposure to asbestos does not meet the objective element of a deliberate indifference claim. (*Id.*)

#### 1.     Standards for Deliberate Indifference

The FAC was screened under the standards that the Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. *Farmer v. Brennan*, 511 U.S. 825 (1994); *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006). No matter where prisoners are housed, prison officials have a duty to ensure that they are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety. *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000) (quotation marks and citations omitted). To establish a violation of the Eighth Amendment, the prisoner must "show that the officials acted with deliberate indifference. . . ." *Labatad v. Corrections Corp. of America*, 714 F.3d 1155, 1160 (9th

11

Cir. 2013) (citing *Gibson v. County of Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002).

The deliberate indifference standard involves both an objective and a subjective prong. First, the alleged deprivation must be, in objective terms, "sufficiently serious." *Farmer* at 834. Second, subjectively, the prison official must "know of and disregard an excessive risk to inmate health or safety." *Id.* at 837; *Anderson v. County of Kern*, 45 F.3d 1310, 1313 (9th Cir. 1995). Upon screening, liberally construed and affording Plaintiff the benefit of any doubt as required by *Hebbe v. Plilier*, 627 F.3d 338, 342 (9th Cir. 2010), Plaintiff's allegations showing inhalation of asbestos was accepted as sufficiently serious to meet the objective prong. (Doc. 26, p. 5.)

### 2. Defendants' Motion

#### a. Objective Prong

Defendants contend that Plaintiff's allegation of exposure to asbestos for one day is not sufficiently serious to meet the objective element of a deliberate indifference claim. (Doc. 34, pp. 22-24.) Defendants contend that Plaintiff does not, and cannot state a cognizable claim since only repeated exposure to asbestos results in harm. (*Id.*, p. 22 (citing *Thao v. Dobie*, No. 16-CV-01098-PJH, 2017 WL 2806744, at *5 (N.D. Cal. June 29, 2017) ("asbestos-related diseases usually require a significant and prolonged exposure to asbestos as opposed to the at most minimal degree of exposure at issue")).) Defendants contend that Plaintiff's allegations of exposure to asbestos on a single day and the results of air monitoring showing "no asbestos fibers above the permissible exposure limit," is not objectively "sufficiently serious" to state a cognizable claim. (Doc. 34, p. 23.) Defendants misconstrue both the known risk posed by asbestos exposure and Plaintiff's allegations regarding the air monitoring results.

Asbestos has been found to pose "a serious risk to human health." *Wallis v. Baldwin*, 70 F.3d 1074, 1076 (9th Cir. 1995) (reversing grant of defense summary judgment for inmate on work crew exposed to asbestos for approximately forty-five hours) (citing 20 U.S.C. §§ 3601(a)(3), 4011(a)(3) (noting the Congressional finding that "medical science has not established any minimum level of exposure to asbestos fibers which is considered to be safe to individuals exposed to the fibers." 20 U.S.C. § 3601(a)(3) (Congressional statement of findings and purposes for the Asbestos School Hazard Detection and Control Act of 1980); *id.* §

4011(a)(3) (Congressional statement of findings and purpose for the Asbestos School Hazard Abatement Act of 1984).

"[E]xposure to asbestos fibers has been identified over a long period of time and by reputable medical and scientific evidence as significantly increasing the incidence of cancer and other severe or fatal diseases, such as asbestosis." 20 U.S.C. § 3601(a)(1) (Congressional statement of findings and purposes for the Asbestos School Hazard Detection and Control Act of 1980). Schools were not closed on that finding; but Congress directed that a task force be established, that states prepare plans, and that financial and other assistance be provided to states to address the problem. *See* 20 U.S.C. § 3601(b). Further, while the Occupational Safety and Health Administration ("OSHA") has regulations that allow some asbestos exposure for workers, the allowable amounts are exceedingly low. Employers are to ensure that employee exposure to an airborne concentration of asbestos is at or below "0.1 fiber per cubic centimeter of air as an eight (8)-hour time-weighted average," 29 C.F.R. § 1910.1001(c)(1), and not exceeding "1.0 fiber per cubic centimeter of air (1 f/cc) as averaged over a sampling period of thirty (30) minutes," § 1910.1001(c)(2).

Plaintiff alleges that on December 26, 2014, in his assigned job, he was directed to work cleaning up from a leak. (Doc. 25, FAC, ¶26.) Plaintiff was allegedly required to use his bare hands and breathe the asbestos dust and micro-fibers particles disbursed by handling the materials as two individuals removed insulation materials that fell to the ground for Plaintiff to gather. (*Id.*, at ¶¶12, 26.) Immediately after working that day, Plaintiff experienced a cough, eye irritation, throat irritation, sneezing, running nose and other distressing symptoms that he did not have before his exposure to asbestos. (*Id.*, at ¶14.) Defendants Morse and Steadman allegedly stood at a distance while Plaintiff performed the work. (*Id.*, at ¶15.) Defendant Sodergren then responded to a letter written by Plaintiff to the warden, in which Defendant Sodergren stated that it had been determined that Plaintiff was not requested to assist the plumber on December 26, 2014, that Plaintiff had not come into contact with any asbestos materials, that a Plant Operations Asbestos Team subsequently cleaned the area using OSHA protocols, and that air monitoring was completed and tested by a third party lab that returned results showing no asbestos fibers above

the permissible exposure limit. (*Id.*, at ¶23.) Plaintiff then alleges that his response to the next level simply stated "STATEMENTS MADE ARE FALSE." (*Id.*, at ¶25 (emphasis in original).)

Defendants' motion presumes that all of the asbestos laden materials to which Plaintiff was exposed were wet, and that the air quality testing was conducted under the conditions to which Plaintiff allegedly was exposed on December 26, 2014. However, as stated above, on summary judgment, Plaintiff's filings must be liberally construed because he is a *pro se* prisoner, *Thomas*, 611 F3d at 1150, and all inferences must be drawn in the light most favorable to Plaintiff as the nonmoving party, *Comite de Jornaleros*, 657 F.3d at 942. Liberally construed and drawing all inferences in Plaintiff's favor, result in finding that Plaintiff allegedly was exposed to materials that contained asbestos that were dry and wet, and that the air quality testing was conducted sometime before Defendant Sodergren responded to Plaintiff's correspondence, but after Plaintiff was required to assist in cleaning up the insulation materials on December 26, 2014. Similarly, Plaintiff's allegations that Defendant Sodergren's response stated that an asbestos team ultimately cleaned the area using OSHA protocols add weight to an inference in Plaintiff's favor that he was exposed to asbestos in levels beyond that which "today's society chooses to tolerate." *Helling v. McKinney*, 509 U.S. 25, 36 (1993). Liberally construed, Plaintiff's allegation that Defendants Moser and Steadman stood at a distance while Plaintiff performed the work also supports this conclusion. Thus, it cannot be found that Plaintiff's allegations in the TAC fail to satisfy the objective prong for his deliberate indifference claim.

### b. Subjective Prong

Defendants also contend that Plaintiff's allegations do not meet the subjective prong of an Eighth Amendment claim. (Doc. 34, p. 24.) Defendants contend that Plaintiff's allegations do not show that Defendants were aware of a threat posed by the wet insulation containing asbestos, and failed to take reasonable measures to protect Plaintiff. (*Id.*) Defendants contend that this finding is supported by Plaintiff's allegations that Defendant Moser told Plaintiff that the asbestos did not present a health risk because it was wet. (*Id.* (citing Doc. 25, FAC at 5 ¶ 26).) Defendants contend such a finding is further supported by Plaintiff's allegations that test results indicated that there were no asbestos fibers in the air above the permissible exposure limit. (*Id.*)

Defendants' argument here fails for the same reasons discussed under the objective prong. Liberally construed, Plaintiff's allegations do not show that he was only exposed to wet insulation. Likewise, Plaintiff's allegation that Defendant Moser told Plaintiff there was no danger because the material was wet, cannot be leniently construed to prevail over Plaintiff's allegation that Defendants Moser and Steadman stood at a distance while Plaintiff worked. To the contrary, taking these allegations together, and drawing all inferences in Plaintiff's favor, the allegations show that Defendants Moser and Steadman knew the materials posed a danger to which they chose not to be exposed by standing some distance away, and yet intentionally told Plaintiff that it posed no danger. This is tantamount to deliberate indifference to a known serious risk of injury. Thus, it cannot be found that Plaintiff's allegations in the TAC fail to satisfy the subjective prong for his deliberate indifference claim.

### D. Qualified Immunity

Finally, Defendants contend that they are entitled to qualified immunity. (Doc. 34, pp. 26-28.) "Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Escondido v. Emmons*, 586 U.S. ___, *4 (Jan. 7, 2019) (quoting *Kisela* v. *Hughes*, 584 U. S. ___, ___ (2018) (*per curiam*) (slip op., at 4) (internal quotation marks omitted); see *District of Columbia* v. *Wesby*, 583 U. S. ___, ___–___ (2018); *White* v. *Pauly*, 580 U. S. ___, ___–___ (2017) (*per curiam*); *Mullenix* v. *Luna*, 577 U. S. ___, ___–___ (2015) (*per curiam*). Qualified immunity analysis requires two prongs of inquiry: "(1) whether 'the facts alleged show the official's conduct violated a constitutional right; and (2) if so, whether the right was clearly established' as of the date of the involved events 'in light of the specific context of the case.'" *Tarabochia v. Adkins*, 766 F.3d 1115, 1121 (9th Cir. 2014) quoting *Robinson v. York*, 566 F.3d 817, 821 (9th Cir. 2009); *see also Pauluk v. Savage* , --- F.3d. ---, 2016 WL 4598287, *8 (9th Cir. Sept. 8, 2016). These prongs need not be addressed in a particular order. *Pearson v. Callahan,* 555 U.S. 223 (2009).

To determine whether a government official should be granted qualified immunity, under the first prong, the facts are to be viewed "in the light most favorable to the injured party."

*Chappell v. Mandeville*, 706 F.3d 1052, 1058 (9th Cir. 2013) quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *receded from on other grounds by Pearson*, 355 U.S. at 817-21; *see also Bryan v. MacPherson*, 630 F.3d 805, 817 (9th Cir. 2010). However, the existence of a material factual dispute does not necessarily preclude a finding of qualified immunity. *Estate of Ford v. Ramirez-Palmer*, 301 F.3d 1043, 1053 (9th Cir. 2002).

Under the second prong, courts are not to define clearly established law "at a high level of generality." *Escondido*, 586 U.S., at ___ (slip opp., at 4) (quoting *Kisela*, 584 U. S., at ___ (slip op., at 4) (internal quotation marks omitted in *Escondido*)); *see also White v. Pauly*, --- S.Ct. ---, 2017 WL 69170, *4 (January 10, 2017) quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011). "The dispositive question is 'whether the violative nature of *particular* conduct is clearly established.' " *Ibid.* (emphasis added in *Mullinex*). "This inquiry ' " 'must be undertaken in light of the specific context of the case, not as a broad general proposition.' " ' " *Id.*, quoting *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (per curiam) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). "[G]eneral statements of the law are not inherently incapable of giving fair and clear warning" to officers, *White*, at *5, quoting *United States v. Lanier*, 520 U.S. 259, 271 (1997), but "in the light of pre-existing law the unlawfulness must be apparent," *Id.*, quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). "The relevant inquiry is whether existing precedent placed the conclusion that [the defendant] acted unreasonably in the [specific circumstances confronted] 'beyond debate.' " *Mullenix, supra*, at 309 quoting *al-Kidd, supra*, at 741.

"To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Reichel*, 132 S.Ct. at 2092; *see also Castro v. County of Los Angeles,* 833 F.3d 1060 (9th Cir. 2016). "When properly applied, [qualified immunity] protects all but the plainly incompetent or those who knowingly violate the law." *al-Kidd*, 563 U.S. at 743 (citation and internal quotation marks omitted). "We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Id.*, at 741. "[A] 'robust consensus of cases of persuasive authority' " in the Courts of Appeals *could* establish the federal right [in question]." *City and County of San Francisco v. Sheehan,* --- U. S. ---, 135 S.Ct. 1541, 1778 (2015) (slip op.,

at 16) (emphasis added) (word choice of "could" (i.e. possibility) by the Court noteworthy and distinguishable from a finding that a "robust consensus" of appellate court decisions "*would"* or *"shall"* (i.e. definitive) establish the existence of a federal right).

The second prong of the qualified immunity analysis is addressed first as it is dispositive. *Pearson,* 555 U.S. 223. The asbestos exposure to which Plaintiff was subjected did not violate a right that was clearly established in 2014. In fact, there was only one Ninth Circuit case that addressed a deliberate indifference claim made by an inmate who was required to clean-up asbestos-laden materials -- *Wallis v. Baldwin*, 70 F.3d 1074, 1076 (9th Cir. 1995). Wallis was part of a cleaning crew that spent approximately forty-five hours cleaning the attics of three wings of a main prison building. The attics housed pipes covered with insulation containing asbestos which had been damaged during reroofing a few months earlier. During the reroofing, some of the insulation material had broken loose and lay scattered around the attic with debris from the reroofing. As part of their cleaning responsibilities, the work detail was required to tear off loose pipe covering and insulation which they bagged for disposal without appropriate protective gear. The attic areas lacked outside ventilation and the work detail's activity stirred up dust and debris. Wallis and the other inmates on the cleaning crew were given face masks with packaging that expressly stated it was inadequate for use with asbestos. The corrections officer who supervised the work crew noticed asbestos in the attics on the second day of the cleaning detail and experienced pain in his lungs during the cleanup process.

Wallis filed a grievance and received a response from the Assistant Superintendent, days after the work in the attics had been halted, admitting that the attics contained asbestos, but stating that all of the asbestos had been safely encapsulated before the work detail's cleaning efforts. Although that contention may have been true before the reroofing and damage caused by falling debris, it was contradicted by the report of the state fire marshal following the roof repair. After cleaning was halted, an inspection of the attics found areas where pipe insulation was damaged and where asbestos was exposed. Subsequently, an outside asbestos abatement company was hired and reported removing 1,132.8 pounds of asbestos from the areas in question.

The one day of work that Plaintiff allegedly put in cleaning up at least partially wet

materials that contained asbestos in this action does not equate to the facts in *Wallis* where the inmate worked removing dry asbestos material for over a week's worth of time. Moreover, only one case from the appellate court in this circuit does not come establish "a 'robust consensus of cases of persuasive authority' " to clearly establish an Eighth Amendment violation on the facts alleged by Plaintiff. *Sheehan,*135 S.Ct. at 1778. The Court cannot find that the law on this issue was "sufficiently clear that every reasonable official would have understood that what he is doing violates" the law, *Reichel*, 132 S.Ct. at 2092, or that the constitutional question at issue here was "beyond debate," *al-Kidd*, 563 U.S. at 741, in December of 2014. Qualified immunity applies because in 2014, when the events at issue here occurred, the Defendants had no "fair and clear warning of what the Constitution requires." *al-Kidd*, 563 U.S. at 746, (internal quotations and citation omitted). Because the second prong of the qualified immunity analysis is dispositive, the Court need not decide whether the Constitution was violated by the working conditions involving asbestos to which Plaintiff was subjected in 2014.[9]

## CONCLUSION & RECOMMENDATION

Based on the foregoing, the Court **HEREBY RECOMMENDS** that Defendants' motion for summary judgment, filed on May 3, 2018 (Doc. 34), be **GRANTED and DENIED** as follows:

1. Defendants are entitled to summary judgment on Plaintiff's claims against them because Plaintiff failed to exhaust available administrative remedies before filing suit in violation of 42 U.S.C. § 1997e(a). Defendants' motion for summary judgment thereon should be **GRANTED**;

2. Defendants motion to dismiss this action for Plaintiff's failure to state a cognizable claim should be **DENIED**; and

3 Defendants are entitled to qualified immunity on Plaintiff's claims, and their motion

---

[9]Defendants did not submit evidence on the working conditions to which Plaintiff was subjected on the date in question aside from the evidence on IA #15-02391 in which Plaintiff raised the inaccuracies of Defendant Sodergren's response to a CDCR Form 22 Plaintiff filed on the incident. Defendant Sodergren's response that Plaintiff was not working on December 26, 2014, appears refuted by both the declaration of Kevin Wedgaerther, Maintenance Mechanic (Doc. 41, p. 6) and the "Inmate Monthly Time Log for December, 2014" which Plaintiff submitted to the first level review of IA #15-02391 (Doc. 34-2, p. 19).

for summary judgment thereon should be **GRANTED and this action should be dismissed with prejudice.**

This Court's recommendation that Defendants are entitled to qualified immunity on the substance of Plaintiff's claims, if adopted, will result in the dismissal of this entire action with prejudice.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). **Within 21 days** after being served with these Findings and Recommendations, the parties may file written objections with the Court. Local Rule 304(b). The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson*, 772 F.3d at 838-39 (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: __January 31, 2019__  /s/ *Sheila K. Oberto*
UNITED STATES MAGISTRATE JUDGE